UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEBRA CLINKSCALES, | CASE NO. 5:10CV798 |
| Plaintiff, | |
| | MAGISTRATE JUDGE |
| | GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, | **MEMORANDUM OPINION & ORDER** |
| COMMISSIONER OF | |
| SOCIAL SECURITY, | |
| Defendant. | |

Debra Clinkscales ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Commissioner's decision and dismisses Plaintiff's complaint in its entirety with prejudice:

## I.  PROCEDURAL HISTORY

On December 14, 2006, Plaintiff filed an application for SSI, alleging an onset date of September 1, 2006. ECF Dkt. #14-6 at 2-4. The SSA denied her claim initially and on reconsideration. ECF Dkt. #14-5 at 2-4, 8-10.

Plaintiff thereafter requested a hearing before an Administrative Law Judge ("ALJ") and the hearing was held on September 16, 2009. ECF Dkt. #14-3 at 2. At the hearing, the ALJ received testimony from Plaintiff, who was represented by counsel, and Thomas Nimberger, a vocational expert ("VE"). ECF Dkt. #14-3 at 2.

On October 5, 2009, the ALJ issued a Notice of Decision – Unfavorable, finding that Plaintiff was not disabled. ECF Dkt. #14-2 at 10-19. Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied her request for review. *Id*. at 2-6.

On April 16, 2010, Plaintiff filed the instant suit and Defendant thereafter filed an answer. ECF Dkt. #s 1, 13.  On August 2, 2010, Plaintiff filed a brief on the merits, and on October 21, 2010, Defendant filed a brief on the merits.  ECF Dkt. #s 15, 18.  On October 23, 2010, Plaintiff filed a reply brief.  ECF Dkt. #19.

## II.  SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In his decision, the ALJ found that Plaintiff suffered from degenerative disc disease ("DDD"), osteomyelitis, and diminished vision in one eye, which qualified as severe impairments under 20 C.F.R. §416.920(c).  ECF Dkt. #14-2 at 12.  The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id*. at 13.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, which included the following limitations:  lifting, carrying, pushing and pulling up to twenty pounds occasionally and ten pounds frequently; siting and standing and/or walking for up to six hours, with the ability to alternate positions briefly (for one minute or less) every thirty minutes; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching and crawling; and no working around unprotected heights, dangerous machinery or other workplace hazards.  ECF Dkt. #14-2 at 13.  The ALJ determined that Plaintiff had no past relevant work and she had a limited education.  *Id*. at 18.

Based on the record and the VE's testimony, the ALJ determined that Plaintiff had the RFC to work in jobs existing in significant numbers in the national economy, such as a mail clerk, cafeteria attendant, and counter clerk. ECF Dkt. #14-2 at 18.

## III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

-2-

> 2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));
>
> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & uman Servs.*,

736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

### A. TREATING PHYSICIAN RULE

Plaintiff asserts that the ALJ failed to provide good reasons for rejecting the opinion of her treating rheumatologist, Dr. Azem, and the opinion of consultative examiner, Dr. Duncan. ECF Dkt. #15 at 7-10.

On May 7, 2009, Dr. Azem completed a medical source statement for the Ohio Department of Jobs and Family Services opining that Plaintiff could: sit uninterrupted for ten minutes with back support; stand/walk for ten minutes before having to sit; and lift/carry less than three pounds frequently and occasionally. ECF Dkt. #14-15 at 20. Dr. Azem concluded that Plaintiff had no limitations in pushing, pulling, bending, reaching, handling, performing repetitive foot movements, seeing, hearing or speaking. *Id*. at 21. The form asked Dr. Azem to identify the observations and/or medical evidence leading her to her conclusions and she cited Plaintiff's back pain during examination, lumbar spine, swollen joints, and abnormal lab results. *Id.* Dr. Azem also concluded that Plaintiff was unemployable and that her condition was "chronic." *Id*. Dr. Azem further noted that Plaintiff had inflammatory polyarthritis, a positive ANA, and a Vitamin D deficiency. *Id*. at 21. She described Plaintiff's health status as poor but stable. *Id*.

An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). In other words, an ALJ must give a treating physician's opinion controlling weight only if the opinion relies on objective medical findings, *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985), and substantial evidence does not contradict it, *Hardaway v. Sec'y of Health and Human Servs*., 823 F.2d 922, 927 (6th Cir.1987). If the ALJ finds the treating physician's opinion fails to meet these two conditions, he may discredit the opinion as long as he articulates a reasoned basis for doing so. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir.1987). "When deciding if a physician's opinion is consistent

-4-

with the record, the ALJ may consider evidence such as the claimant's credibility, whether or not the findings are supported by objective medical evidence, as well as the opinions of every other physician of record." *Coldiron v. Comm'r of Soc. Sec*., 391 Fed. App'x 435, 442, 2010 WL 3199693, at **6 (6th Cir. Aug. 12, 2010), unpublished, citing SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996); *Hickey-Haynes v. Barnhart*, 116 Fed.Appx. 718, 726 (6th Cir.2004) (An ALJ may "consider all of the medical and nonmedical evidence.")(quotation marks and citation omitted)).

If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2) (i), (d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004), quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon

-5-

the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544.

In this case, Plaintiff concedes that the ALJ articulated specific reasons for assigning less than controlling weight to Dr. Azem's RFC assessment. ECF Dkt. #15 at 9. However, Plaintiff asserts that the ALJ failed to provide legitimate reasons for failing to attribute appropriate weight to Dr. Azem's opinions and the opinion of consulting physician Dr. Duncan. *Id*. at 10.

Plaintiff first asserts that even if she "is the worst liar in the world, she has a severe and significantly medically determinable impairment that has limited her ability to function in the workplace" due to her severe cervical degenerative disc disease, her residuals of cervical osteomyeltis, and her diminished eyesight. ECF Dkt. #15 at 9. The ALJ agreed that Plaintiff had severe impairments. He found at Step Two of his analysis that Plaintiff had the severe impairments of degenerative disc disease, osteomyelitis and diminished vision in one eye. ECF Dkt. #14-2 at 12. He also limited Plaintiff's work-related abilities based upon these impairments when he found her able to perform light work with the ability to alternate positions for one minute or less every thirty minutes, and indicated that she could not climb ladders, ropes or scaffolds, could only occasionally climb ramps and stairs and stoop, kneel, crouch and crawl, and she could not work at unprotected heights or around dangerous machinery or workplace hazards. *Id*. at 13. The fact that the ALJ found that Plaintiff had severe impairments at Step Two does not automatically require the ALJ to find that she has major restrictions when determining her RFC at Step Four. *See Thompson v. Astrue*, No. 3:10CV1688, 2011 WL 3208904, at *12 (N.D. Ohio Aug. 2, 2011).

Plaintiff contends that her lack of credibility, which she concedes is a problem, led the ALJ to disregard the objective medical evidence. ECF Dkt. #15 at 7. The Court finds no merit to this assertion. The ALJ did cite to Plaintiff's lack of credibility and noncompliance throughout his decision. He noted that Plaintiff sought to excuse her noncompliance with medical advice by stating that she lacked money for medication and treatment. ECF Dkt. #14-2 at 16. However, he indicated that Plaintiff could have sought low-cost or subsidized health care for herself or requested medication samples from her treating physicians. *Id.* at 16. He also noted that even when treatment was provided to her, Plaintiff was still noncompliant as she failed to take oral antibiotics for her

-6-

osteomyelitis in August 2006, she left the hospital against medical advice on several occasions, she was "lost to follow-up for months" in February 2007, she did not follow-up with her treating physician in early 2009 after emergency room physicians told her to do so, and she failed to get x-rays taken as ordered by her treating physician in May 2009. *Id*. at 15-16. The ALJ surmised that if Plaintiff's neck impairment were as limiting as she stated, she would have complied with the treatment and medical advice provided to her. *Id.* at 16.

The ALJ also noted credibility issues as to Plaintiff's daily living activities. ECF Dkt. #14-2 at 16. He indicated that Plaintiff stated initially at the hearing that her boyfriend does all of the housework, but then admitted that she helps him with everything. *Id*. The ALJ also noted that Plaintiff informed him that her boyfriend was disabled, which belied claims that he did all of the housework. *Id.* The ALJ also indicated that while Plaintiff told him that she could only sit for ten minutes, she sat for thirty minutes during the hearing and had no difficulty sitting, standing or walking during a face to face interview with a SSA representative in December 2006. *Id*. at 15-16. He further noted that Plaintiff initially denied that medication eased her pain, but then stated later that it did relieve the pain. *Id.* at 16. The ALJ also noted credibility concerns with other statements that Plaintiff made such as when Plaintiff had testified at the hearing that she had experienced neck pain since she was a young woman, but had told treating medical sources in May 2006 that she had never experienced neck pain before. ECF Dkt. #14-2 at 16.

While the ALJ did consider Plaintiff's credibility and her consistent noncompliance with treatment, as outlined above, these were proper factors in determining if Dr. Azem's opinion was consistent with the record as a whole. *Coldiron*, 391 Fed. App'x at 442, 2010 WL 3199693, at **6, citing SSR 96-5p, SSR 96-8p, and *Hickey-Haynes*, 116 Fed.Appx. at 726. Further, consideration of credibility and noncompliance did not lead the ALJ to ignore the medical evidence of record. The ALJ noted in his decision that Dr. Azem was the treating rheumatologist and he stated that he gave Dr. Azem's medical source statement "little weight." ECF Dkt. #14-2. He first explained that he found the opinion internally inconsistent because it did not make sense that Dr. Azem would limit Plaintiff's sitting, standing and walking in such an extreme manner and contrarily find that she had no limitations in pushing, pulling, reaching, handling or performing repetitive foot movements. *Id*.

at 17.  The Court does not find that Dr. Azem's lack of limitations in pushing, pulling, reaching, handling objects or performing foot movements are necessarily internally inconsistent with her limitations on Plaintiff's sitting, standing, walking, pushing, pulling, and handling of objects or repetitive foot movements.

However, the ALJ also explained that he gave "little weight" to Dr. Azem's assessment because it was not supported by the objective medical evidence.  ECF Dkt. #14-2 at 17.  He found that while Dr. Azem's treatment notes revealed Plaintiff's complaints of pain and limited range of motion in the neck, no other abnormal findings supported her extreme limitations.  *Id*.  The ALJ reviewed the objective medical evidence in the beginning of his Step Four findings, even reviewing the medical evidence prior to Plaintiff's alleged onset date of September 1, 2006.  ECF Dkt. #14-2 at 14.  The ALJ reviewed the medical evidence regarding Plaintiff's impairments starting with her admission to the hospital in June 2006 for a staph infection in her neck, along with diagnoses of C2-C3 osteomyeltis, diskitis and an abscess in the cervical region.  *Id*.  He noted that Plaintiff was discharged on oral antibiotics but was readmitted to the hospital in July 2006 with an exacerbation of neck pain after stating that she had not been compliant with medical advice.  *Id.* at 14-15.  The ALJ noted that the August 2006 MRI showed:  multilevel degenerative disc disease of the cervical spine with straightening and slight reversal of cervical lordosis; change and contrast enhancement involving the C2-C3 endplates within a small enhancing anterior epidural collection at the same level consistent with a plain osteomyelitis and epidural abscess; a large enhancing edematous pre-cervical collection extending from the skull base to the bottom of C5; and disc protrusions with flattening of the spinal cord ventrally at C3-C4 and C4-C5.  *Id.* at 15.

The ALJ further noted that Dr. Azem's August 15, 2006 progress notes revealed that Plaintiff denied any pain, numbness or tingling.  ECF Dkt. #4-2 at 15.  He also reviewed the next medical record of treatment occurring in February 2007, where Plaintiff was admitted to the hospital after having been "lost to follow-up for months."  *Id.*  Medical records from the Akron City Hospital dated February 8, 2007 showed that Plaintiff had stayed in the hospital from January 12, 2007 through January 19, 2007 for osteomyeltitis/diskitis of her C2-C3 and was at a nursing home for six weeks of IV therapy for her condition.  ECF Dkt. #14-12 at 17.  Hospital records indicated in

Plaintiff's medical history that Plaintiff had "reappeared" in January 2007 after being lost in follow-up for months. *Id*. Plaintiff was complaining of neck pain for the last two weeks and examination revealed absent vertebral spine tenderness but limited range of motion in all directions in Plaintiff's neck and tenderness to palpation. *Id.* at 17-18. Plaintiff was continued on ciprofloxacin tablets, pain medications, and her IV solution, and told to use a heating pad to her neck three times daily for fifteen minutes at a time. *Id*. at 18. She was also told to follow up in four weeks. *Id*.

The ALJ noted the next medical record as a consultative examination performed on May 8, 2007 by an agency examiner. ECF Dkt. #14-2 at 15. The ALJ cited Dr. Duncan's report of Plaintiff's complaints of neck pain, headaches, and finger numbness. *Id*. He noted Dr. Duncan's findings that Plaintiff was unable to move her neck and Dr. Duncan was unable to move her neck on examination. *Id*. The ALJ also noted Dr. Duncan's examination findings that Plaintiff had no joint swelling, full range of motion in all extremities, and no spasms or atrophy. *Id*.

The ALJ further cited to Plaintiff's September 2008 cervical spine MRI showing severe degenerative changes at C2-C3 with sclerosis noted in adjacent vertebral bodies, but no abnormal enhancement or mass suspicious for abscess or infection. ECF Dkt. #14-2 at 15. He noted that the MRI also showed canal stenosis from C2-C3 through C6-C7. *Id*. However, the ALJ also cited to a report from Plaintiff to medical sources that same month that she had not experienced any neck pain in over a year. *Id.*, citing ECF Dkt. #14-13 at 2. The emergency room report from Plaintiff's September 19, 2008 visit indicated that Plaintiff presented for neck pain over the last week and had reported that she "has not been having this pain for nearly a year now." ECF Dkt. #14-13 at 2. The emergency room report also indicated that Plaintiff had a history of poor compliance. *Id.* Upon examination, the emergency room doctor indicated that "[a]side from weakness caused by pain on examination, there do not appear to be focal neurological deficits at this time." *Id.* Plaintiff was prescribed pain medications. *Id*. at 23. The ALJ also reviewed Plaintiff February 2009 CT scan of the cervical spine, indicating that Plaintiff had significant sclerosis at C2-C3 and degenerative changes throughout her cervical spine. ECF Dkt. #14-2 at 15.

Upon review of the medical evidence and his decision to give "little weight" to the part of Dr. Azem's opinion, the ALJ explained that while Plaintiff had "cervical spine issues," no doctor

-9-

had recommended surgery or provided anything more than conservative treatment. ECF Dkt. #14-2 at 17. He stated that the objective medical evidence did not support Dr. Azem's extreme limitations and found that Plaintiff's noncompliance and daily activities contradicted such extreme limitations as she indicated that she cooked, cleaned, read, lived independently, shopped by herself and used public transportation. *Id.* at 15. He also noted that the record showed that Plaintiff had walked to the hospital on one occasion. *Id.* He further found that Plaintiff sat for at least thirty minutes without difficulty when she appeared before him at the hearing. *Id.* The ALJ also questioned whether the extreme limitations found by Plaintiff's treating source, as well as found by some of the examining sources, would have been the same if she had complied with medication and treatment as directed. *Id.*

Based upon the foregoing, the Court finds that the ALJ adequately articulated his reasons for attributing "little weight" to the medical source statement of Dr. Azem.

### B. **OTHER PHYSICIANS' OPINIONS**

Plaintiff also challenges the ALJ's decision to give "little weight" to the opinion of Dr. Duncan, the agency examining physician who opined in May 2007 that Plaintiff would have no difficulty with work-related physical activities such as following commands, and standing for up to one hour, but would have difficulty sitting, lifting and carrying objects, and traveling. ECF Dkt. #14-2 at 16; ECF Dkt.#14-2 at 21. The ALJ reviewed Dr. Duncan's opinion and gave it "little weight" because it was vague, inconsistent with the objective medical evidence, and unsupported by Plaintiff's daily living activities. ECF Dkt. #14-2 at 16.

It is true that opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). However, the

-10-

opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio Aug. 5, 2009). This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96-6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, and the specialization of the physician. *See* 20 C.F.R. § 416.972(d), (f).

However, the Sixth Circuit Court of Appeals has held that the regulation requiring an ALJ to give good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, at **10 (6th Cir. Feb. 9, 2006), unpublished. The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
>> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.*

Here, the ALJ did provide reasons for attributing "little weight" to the opinions of Dr. Duncan and substantial evidence supports his decision to do so. The ALJ is correct that Dr. Duncan's limitations are vague. She states that Plaintiff would not have difficulty with work-related physical activities such as standing for up to one hour. ECF Dkt. #14-12 at 19. However, Dr. Duncan does not elaborate as to whether this statement means that Plaintiff could stand only one hour total per eight-hour workday, or whether Plaintiff could sit up to one hour at a time with a sit/stand option. Further, Dr. Duncan opines that Plaintiff would have difficulty sitting, and lifting and carrying objects, but she does not indicate if Plaintiff was totally precluded from such activities or whether limited frequency or duration of these activities could be tolerated. *Id.* She also fails to

-11-

explain how or why her diagnoses of neck stiffness and decreased range of motion, neck pain, and headaches, led her to conclude that Plaintiff would have difficulty sitting, and lifting and carrying objects, especially in light of other relatively normal examination findings.  Thus, the ALJ correctly found that Dr. Duncan's opinion was vague.

The ALJ also found that the objective medical evidence did not support Dr. Duncan's extreme limitations.  ECF Dkt. #14-2 at 16.  As cited by the ALJ, Dr. Duncan's own examination indicated that Plaintiff could not move her neck, but Dr. Duncan otherwise found full range of motion in all four of Plaintiff's extremities, no stasis dermatitis, and normal joints with no signs of enlargement, thickening, effusion, swelling, tenderness, heat or redness.  ECF Dkt. #14-12 at 20.  The ALJ noted that Dr. Duncan further found that Plaintiff had a normal gait, no difficulty grasping or manipulating objects with either hand, and Plaintiff had no muscle spasms or muscle atrophy.  *Id*. at 22-23.

The ALJ also reviewed the other medical evidence, as outlined above in the analysis of Dr. Azem's opinion, and the ALJ also cited the state agency reviewing physicians' RFC assessments for Plaintiff.  ECF Dkt. #14-2 at 16.  Dr. Hinzman had opined that Plaintiff could perform medium work, which involved lifting, carrying, pushing and pulling 50 pounds occasionally and 25 pounds frequently, and sitting, standing/walking for six hours of an eight-hour workday.  *Id*.  The ALJ gave great weight to Dr. Hinzman's opinions as to Plaintiff's abilities to sit, stand and walk, finding them consistent with the weight of the evidence and Plaintiff's daily living activities.  *Id*.  The ALJ gave little weight to Dr. Hinzman's opinions on lifting and carrying as he gave Plaintiff's testimony the benefit of the doubt and had evidence at the hearing that was not presented to Dr. Hinzman that persuaded the ALJ that Plaintiff could perform only light work.  *Id*. at 17.  The ALJ gave weight to the RFC assessment of state agency reviewing physician Dr. Cho, who opined that Plaintiff could perform light work with the ability to sit and stand/walk for six hours with the ability to periodically change positions due to pain.  *Id*.  Dr. Cho further limited Plaintiff to never climbing ladders, ropes or scaffolds and should avoid workplace hazards, unprotected heights and moving machinery.  *Id*.  The ALJ incorporated Dr. Cho's RFC into his RFC, finding that it was consistent with and supported by the evidence of record and by Plaintiff's daily living activities and relatively normal physical

-12-

examinations.

This Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters,* 127 F.3d at 528. While MRIs show that Plaintiff has cervical canal stenosis and advanced degenerative changes, the record as a whole, and the ALJ's review of the record, provide evidence that a reasonable mind would accept as adequate to support the ALJ's treatment of the opinions of Drs. Azem and Duncan and the RFC determination of the ALJ. Based upon the examination findings in the record, as well as Plaintiff's noncompliance with treatment and medication, as well as lack of follow-up and lack of credibility, as well as a lengthy period of time where she did not seek treatment for her neck pain because she informed others that she did not have neck pain, substantial evidence supports the ALJ's RFC assessment.

### C. **RFC/LIGHT WORK DETERMINATION**

In this assertion, Plaintiff contends that substantial evidence does not support the ALJ's determination that she was capable of light work. ECF Dkt. #15 at 10. Plaintiff argues that because both her treating physician and an agency examining physician found her limited to mostly sitting and limited her walking and standing, she was capable of only sedentary work, since light work, by definition, requires the ability to stand and/or walk up to six hours of an eight-hour workday or to use foot controls. *Id.* Plaintiff complains that the ALJ did not rely on the VE's responses to hypothetical persons presented by the ALJ and Plaintiff's counsel. *Id.* at 13. Plaintiff asserts that the ALJ did not limit her ability to be on task or her ability to perform only sedentary work when "there was support in the record for such a limitation[sic] since anyone who examined Clinkscales limited her ability to stand and walk and all noted her pain in arms and hands and neck." *Id*.

The Court finds no merit to this contention. Plaintiff is essentially disagreeing with the ALJ's RFC which found her capable of light work but did not include a finding that she would be off task. According to SSR 96–8p, an ALJ's RFC assessment must be based "on all the relevant evidence in the case record, such as: a claimant's medical history, medical signs and laboratory findings, the effects of treatment, including side effects and dosages, daily activities, lay evidence, recorded observations, medical source statements, the effects of symptoms, such as pain, that are

-13-

reasonably attributed to a medically determinable impairment, attempted work efforts, the need for a structured living environment and work evaluations. SSR 96-8p. In his RFC, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, ... explain why the opinion was not adopted." *Id.*

As explained in the preceding sections, substantial evidence supported the ALJ's RFC determination and the weight that he gave to the opinions of Dr. Azem and Dr. Duncan. Plaintiff asserts here that the ALJ should have included the limitations of being off task and performing only sedentary work in his RFC to the VE. However, an ALJ is not required to rely on VE testimony as to limitations that the ALJ does not find credible and does not include in his RFC determination. *Casey v. Sec'y of Health & Human* Servs., 987 F.2d 1230, 1235 (6th Cir. 1993)("it is well-established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). The ALJ limited Plaintiff to light work, not sedentary work, and as explained above, substantial evidence supports his RFC. It is the ALJ's ultimate duty to determine a claimant's RFC. 20 C.F.R. § 416.946(c); *Webb v. Commissioner of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) and an ALJ is required to incorporate only those limitations into his RFC or hypothetical person to the VE that he finds credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

## **VI. CONCLUSION**

For the foregoing reasons, the AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

IT IS SO ORDERED.


DATE: August 31, 2011            */s/George J. Limbert*
                                             GEORGE J. LIMBERT
                                             UNITED STATES MAGISTRATE JUDGE